UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SEMICONDUCTOR EQUIPMENT AND MATERIALS INTERNATIONAL, INC.**, <br><br>Plaintiff, <br><br>v. <br><br>**THE PEER GROUP, INC., ET AL.**, <br><br>Defendants. <br><br>And related counterclaims. | Case No. 15-cv-00866-YGR <br><br>**ORDER DENYING PLAINTIFF SEMICONDUCTOR EQUIPMENT AND MATERIALS INTERNATIONAL'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS UNDER FRCP 12(B)(6) AS MOOT; DETERMINING PREVAILING PARTY FOR PURPOSES OF ATTORNEY FEES** <br><br>Re: Dkt. No. 34 |

Plaintiff and Counter-Defendant Semiconductor Equipment and Materials International, Inc. ("SEMI") has filed a special motion (Dkt. No. 34) to strike and motion to dismiss the third counterclaim stated in PEER Intellectual Property Inc. and The PEER Group, Inc.'s ("PEER") Answer to First Amended Complaint and First Amended Counterclaims (Dkt. No. 28). The special motion to strike is brought pursuant to California Code of Civil Procedure section 425.16 as a Strategic Lawsuit Against Public Participation ("SLAPP") directed at constitutionally protected speech. Under section 425.16, SEMI seeks to strike the third counterclaim and to be awarded its attorneys' fees and costs. In the alternative, SEMI moves to dismiss the third counterclaim for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Having carefully considered the papers and evidence submitted, the arguments of counsel, and the pleadings in this action, and for the reasons stated herein, the Court **DENIES** the motions as moot in light of PEER's filing of an Answer to Second Amended Complaint and Counterclaims. (Dkt. No. 67, SAXC.)  The SAXC has removed PEER's claim for intentional interference with contractual relations, the claim that was the target of the instant special motion to strike and motion to dismiss.  However, the Court finds that SEMI is the prevailing party on the anti-SLAPP motion for purposes of awarding attorney fees and costs pursuant to section 425.16(c).

I.   **PRELIMINARY ISSUE: MOOTNESS OF MOTIONS**

The Ninth Circuit has long permitted a defendant sued in federal court to bring an anti-SLAPP motion to strike pursuant to California Civil Code section 425.16.  *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (citing *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1109-10 (9th Cir. 2003), and *United States ex rel Newsham v. Lockheed Missiles & Space Co.,* 190 F.3d 963, 971 (9th Cir. 1999)).  However, the Ninth Circuit has also refused to apply certain of the limitations in the anti-SLAPP statute where they are in "direct collision" with the Federal Rules of Civil Procedure.  *Verizon Delaware*, 377 F.3d at 1091.  For instance, section 425.16, subsection (f) provides that the filing of an anti-SLAPP motion automatically stays all further discovery unless otherwise ordered based on a showing of good cause.  The Ninth Circuit has found such a discovery limitation to be in direct collision with Rule 56(f), which permits discovery on matters essential to an opposition where the non-moving party has not yet had the opportunity to conduct such discovery.  *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (adopting analysis in *Rogers v. Home Shopping Network, Inc.*, 57 F.Supp.2d 973, 980 (C.D. Cal. 1999)).

As relevant here, California courts applying section 425.16 have held that a party cannot use the right to amend to avoid the consequences of the anti-SLAPP statute.  *Sylmar Air Conditioning v. Pueblo Contracting Servs., Inc.*, 122 Cal. App. 4th 1049, 1054 (2004) (plaintiff may not avoid liability for attorney fees and costs by voluntarily dismissing a cause of action to which an anti-SLAPP is directed or amending the pleading).  However, the Ninth Circuit has held that consideration of an anti-SLAPP motion without permitting leave to amend liberally would be in collision with Rule 15 of the Federal Rules of Civil Procedure.  *Verizon Delaware*, 377 F.3d at

1091.  "Moreover, the purpose of the anti-SLAPP statute, the early dismissal of meritless claims, would still be served if plaintiffs eliminated the offending claims from their original complaint." *Id.*

Nevertheless, even if the pleading is amended to remove the targeted claim, the moving party may still be entitled to attorneys' fees and costs incurred in bringing the anti-SLAPP motion, per section 425.16(c).  *See Rogers*, 57 F.Supp.2d at 982-83; *see also Williams v. Stitt*, No. 14-cv-760-LB, 2014 WL 3421122 at *5 (N.D. Cal. July 14, 2014) (if offending claim removed through amendment, court cannot rule on the anti-SLAPP motion itself, but nevertheless has limited authority to consider whether, on account of the merits of the motion, movant is a prevailing party for purposes of attorney's fees and costs under § 425.16(c)); *Pfeiffer Venice Properties v. Bernard*, 101 Cal. App. 4th 211, 217 (2002) (under California state court procedures, if plaintiff voluntarily dismisses an alleged SLAPP suit during the pendency of an anti-SLAPP motion, court should nevertheless determine whether the defendant is the prevailing party for purposes of attorney's fees).  Thus, the Court proceeds to consideration of the allegations of the anti-SLAPP arguments, and the facts and allegations relevant thereto.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Facts Prior to the Filing of the Action

SEMI is a global industry association and standards-setting body serving the manufacturing supply chain for the micro- and nano-electronics industries.  (SAC ¶ 5.)[1] Defendant TPG is headquartered in Ontario, Canada, and provides factory automation software solutions and consulting services to the semiconductor, photovoltaic, LED and other high technology industries.  TPG advertises on its website located at http://www.peergroup.com/ that it is compliant with many of the standards promulgated by SEMI (the "SEMI Standards").  (SAC ¶ 6.)  SEMI alleges that defendant PEER IP is a shell entity of TPG.  (SAC ¶ 7.)

---

[1] The facts herein are drawn from SEMI's allegations unless otherwise noted.  The Court refers to the Second Amended Complaint ("SAC"), now the operative complaint, although filed pursuant to stipulation on June 5, 2015, while this motion was pending.  The pertinent factual allegations recited herein are nearly identical as between the First Amended Complaint and the SAC.

3

1    TPG's website lists SML as one of PEER's trademarks and states that "SML and the SML
2    Notation are proprietary to The PEER Group Inc. and/or PEER Intellectual Property Inc."  (SAC
3    ¶ 7.)  TPG's website purports to offer a royalty-free license for "SML and SML Notation"
4    provided the licensee provides attribution to TPG and PEER.  (SAC ¶ 21.)

5    History of the ownership of the SML mark is alleged in detail in the SAC.  To summarize
6    briefly, SEMI alleges that it published an early protocol, in 1980 and 1982, to begin developing a
7    notation system.  Thereafter, GW Associates, Inc., which had a member in SEMI's Standards
8    Program, developed and completed a notation system—"SML"—which borrowed from SEMI's
9    earlier protocol.  SEMI alleges that the SML notation system and SML trademark were owned by
10   GW, which published a disclaimer that SML was not proprietary and could be used freely by all.
11   Semiconductor companies, equipment manufacturers, software suppliers and other organizations
12   within the industry used SML without any attribution, licensing, or explicit permission from GW,
13   and GW never took action to stop anyone's use of SML.

14   In 2001, Asyst Technologies Inc. ("Asyst") acquired GW, which it operated as a subsidiary
15   until Asyst went into bankruptcy in 2009.  As part of the bankruptcy, three asset purchase
16   agreements were executed in 2009, including sale of certain Asyst assets to Murata, to Crossing
17   Automation (now Brooks Automation or "Brooks"), and to TPG.  SEMI alleges that the language
18   of the asset purchase agreement between Asyst and Brooks encompasses the SML trademark.
19   (SAC ¶14.)[2]

20   SEMI alleges that in January 2013, TPG first asserted that it owned the copyright in SML
21   and that it would require those using SML to provide attribution to TPG.  (SAC ¶ 18.)  In June
22   2013, after conducting an investigation of the basis for the copyright assertion, SEMI's counsel
23   sent a letter to TPG requesting that TPG provide documentation to support its claim.  (*Id.*)  Months

---

[2] PEER IP disputes this interpretation and instead contends that the asset purchase agreement between Asyst and PEER IP encompassed SML and the SML mark, despite the fact that the now-abandoned trademark registration for SML did not appear on the disclosure schedule for that asset purchase agreement and instead appeared on the purchase agreement now owned by Brooks.  (*See* Declaration of Ryan Tyz In Support of Defendants' Opposition to Plaintiffs' Motion to Strike and Motion to Dismiss, Dkt. No. 45-1, "Tyz Dec.," ¶ 2.)

4

later, in September 2014, TPG's counsel sent a letter to SEMI's counsel asserting ownership of the copyright in SML based on the Asyst asset purchase. (SAC ¶ 19.) SEMI's counsel again requested documentation. TPG counsel then asserted that it also had a trademark in SML in addition to the copyright. (*Id.*)

Counsel for PEER indicates that he first noticed around January 29, 2015, that the abandoned registration for the term "SML" was listed on a disclosure schedule to an asset purchase agreement between Crossing (now Brooks) and Asyst, and was not listed on the disclosure schedule for the asset purchase agreement between TPG and Asyst. Sometime around February 5, he called Brooks' in-house counsel about the registration. They discussed the registration on February 23, 2015, and Brooks indicated a willingness to assign the registration to defendants. (Tyz Dec., ¶¶ 5, 6.)

### B. Procedural History Prior to Counterclaim At Issue In This Motion

SEMI filed the instant action February 25, 2015, alleging claims for declaratory relief against defendants based on TPG's assertion of copyright and trademark rights in SML. Before defendants answered, SEMI filed a First Amended Complaint on March 31, 2015. (Dkt. No. 15.) On April 1, 2015, SEMI filed its answer and counterclaim against SEMI. (Dkt. No. 18.) Those counterclaims alleged entitlement to a declaration of ownership of SML and the SML marks, as well as injunctive and monetary relief for violation of trademark rights under 15 U.S.C. section 1125(a). (*Id.* at ¶¶ 47-55.)

### C. New Conduct After Initiation Of This Action

PEER's counsel indicates that he contacted counsel for the Liquidation Trustee on March 12, 2015 about reopening the Asyst bankruptcy to amend the disclosures so that the SML registration would be listed as PEER's property. (Tyz Dec. ¶ 7.) Thereafter they continued discussions during March and April 2015 about executing an amendment in lieu of reopening the bankruptcy. (*Id.* at ¶¶ 8-14.) On April 1, 2015, PEER sent an email with a proposed amendment to both the Liquidating Trustee's counsel and Brooks' counsel. (*Id.*, ¶ 10.) The Liquidating Trustee signed the amendment on April 16, 2015. (*Id.* at ¶¶ 12, 14.) Brooks' counsel did not sign at that time since he was out of the office. (*Id.* at ¶ 13.)

1   SEMI alleges that, around April 20, 2015, sometime after the United States Patent and
2   Trademark Office ("U.S. PTO") had issued an action denying PEER's application for registration
3   of the "SML" trademark, PEER submitted the amendment, signed by the Liquidating Trustee,
4   purporting to add an SML trademark to the list of assets purchased. (SAC ¶ 22.) SEMI alleges
5   that the "Liquidating Trustee also signed the Amendment without being informed that [PEER]
6   filed an application for the SML word mark before the U.S. PTO and that SEMI and Defendants
7   were in litigation over the SML trademark." (*Id.*)

8   SEMI represents that its counsel contacted the Liquidating Trustee and his counsel in a
9   series of telephone calls from April 22, 2015, to April 30, 2015, and a letter dated April 27, 2015,
10  to determine whether the Asyst bankruptcy had been re-opened, what authority the Liquidating
11  Trustee had to enter into any agreements affecting the assets sold in that process, and whether he
12  was aware of the pending litigation between PEER and SEMI over the ownership rights of the
13  SML trademark, as well as a pending U.S. PTO proceeding regarding the SML trademark. (*See*
14  Declaration of Veronica L. Jackson in Support of Semiconductor Equipment and Materials
15  International's Special Motion to Strike Pursuant to Cal. Code of Civ. Proc. § 425.16 (Anti-
16  SLAPP) ("Jackson Dec."), ¶¶ 3-4; *id.*, Exh. A.) SEMI's counsel also had two telephone
17  conversations on April 24, 2015 and April 30, 2015 with counsel for Brooks to determine whether
18  (i) Brooks entered into any re-assignment agreement of the SML trademark with PEER; and (ii)
19  Brooks was aware of (a) the pending litigation between SEMI and PEER over the latter's assertion
20  of ownership rights in the SML trademark and (b) PEER filed an application for an SML word
21  mark and attached the Amendment as evidence in support thereof. (Jackson Dec., ¶ 6.)

22  On May 1, 2015, Brooks' counsel contacted PEER's counsel to inform him that "[j]ust last
23  week Brooks became aware of the PEER Group's dispute with SEMI and the subsequent lawsuit.
24  As you must know, Brooks is a member of SEMI. We do not wish to be involved in this matter
25  any further, so I am sorry but Brooks cannot sign the document which you and I previously
26  discussed." (Tyz Dec. ¶ 17, Exh. 9.)

27  **D.     Allegations of Counterclaim At Issue**
28  On May 8, 2015, without seeking leave to amend, PEER filed an amended counterclaim

(Dkt. No. 28, First Amended Counterclaims, "FAXC"),³ alleging for the first time a third counterclaim for intentional interference with contractual relations. In the FAXC, PEER alleged that it has repeatedly attempted to resolve its dispute with SEMI, but that "SEMI has persisted in refusing to give attribution to PEER as the owner of SML and the SML Marks in violation of SEMI's own regulations." (FAXC ¶ 45.) The intentional interference claim alleged that SEMI, "through its outside counsel, contacted Brooks and pressured Brooks not to execute the draft re-assignment agreement, to which it had already indicated its agreement." (*Id.*, ¶¶ 60, 62, 65.) PEER also alleged that SEMI contacted the Liquidating Trustee to "pressure [him] to back out of the" amendment to the purchase agreement, resulting in the trustee's withdrawal of his approval and insistence that PEER produce an executed amendment from Brooks and an agreement to indemnify the trustee on account of any claims related to the amendment. (*Id.*, ¶¶ 63, 64.)

PEER alleges that there was a valid contract "between PEER IP and Asyst." (*Id.*, ¶ 78.) PEER further alleges that SEMI knew of the contract between PEER IP and Asyst; that SEMI intended to disrupt the performance of the terms of that contract between PEER IP and Asyst; that SEMI's conduct prevented performance or made performance of the contract between PEER IP and Asyst more expensive or difficult; and that "PEER IP was harmed solely as a result of SEMI's conduct, including but not limited to being denied the full consideration of the [Asset Purchase Agreement with Asyst] and having to expend additional resources addressing SEMI's intentional interference and its unfounded claim that PEER IP does not own SML and the SML marks." (*Id.*, p. 18, ¶¶ 77-82.)

### III.   STANDARDS APPLICABLE TO ANTI-SLAPP MOTION

California enacted section 425.16 of the California Code of Civil Procedure to curtail "strategic lawsuits against public participation" (SLAPP actions), finding "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of

---

³ On April 27, 2015, SEMI filed its answer to the counterclaims. (Dkt. No. 26), as well as a motion to strike certain affirmative defenses. (Dkt. No. 27.) The Court is not aware of any stipulation that would have allowed PEER IP to file an amended counterclaim without first seeking leave to do so.

speech and petition for redress of grievances." Cal.Civ.Proc.Code § 425.16(a). This Court, sitting in diversity, follows the California courts' two-step process for analyzing a special motion to strike a SLAPP suit. *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010). First, the moving party must make "a threshold showing...that the act or acts of which the plaintiff complains were taken 'in furtherance of the right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." *Equilon Enters., LLC v. Consumer Cause, Inc.,* 29 Cal.4th 53, 67 (2002) (quoting Cal. Code Civ. Proc. § 425.16(b)(1)). The moving party does so by showing that act underlying the complaint fits one of the categories spelled out in section 425.16(e). *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002) (citing *Braun v. Chronicle Publishing Co.*, 52 Cal.App.4th 1036, 1043 (1997).) The principal thrust or gravamen of the action determines whether the anti-SLAPP statute applies. *Metabolite,* 264 F.3d at 188.

Once the moving party makes a *prima facie* showing of protected conduct, the evidentiary burden shifts to the complainant to establish a probability of prevailing on the complaint. *Navellier,* 29 Cal.4th at 88. The statute focuses not on the form of the claim, but the underlying nature of the activity giving rise to the asserted liability. *Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist.*, 106 Cal. App. 4th 1219, 1232 (2003). The showing required is the same, even if the underlying claim has been dismissed and all that remains is for the court to determine the prevailing party. *Sylmar Air Conditioning*, 122 Cal. App. 4th at 1056.

### IV. DISCUSSION

#### A. Protected Activity

Here, the Court looks first to whether SEMI has established that PEER's intentional interference claim arises from protected speech or actions. Section 425.16(e) defines a variety of activity that is considered protected under the anti-SLAPP statute, which includes "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(3). Acts in furtherance of the right of petition or free speech under the United States or California Constitution in connection with a public issue include statements or writings before a judicial proceeding, or any other official

8

proceeding authorized by law, and statements or writings made in connection with an issue under consideration or review by a judicial body. Cal. Code Civ. Proc. § 425.16(e). "It is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies." *Martinez v. Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181, 188 (2003). "[A claimant] cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and unprotected activity under the label of 'one cause of action.'" *Fox Searchlight Pictures, Inc. v. Paladino,* 89 Cal.App.4th 294, 308, 106 Cal.Rptr.2d 906 (2001).

In addition to communication in the litigation, communications related to, preparatory to, or in anticipation of litigation, are protected speech for purposes of section 425.16. *See Briggs v. Eden Council for Hope & Opportunity,* 19 Cal.4th 1106, 1115 (1999) (petition-related statements are protected under the anti-SLAPP statute). A statement is in connection with litigation under section 425.16, subdivision (e)(2), if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation. *Neville v. Chudacoff,* 160 Cal. App. 4th 1255, 1266 (2008). This includes factual investigation related to the issues in dispute and statements about the pendency of the litigation. *Neville,* 160 Cal. App. 4th at 1266; *see also Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc*., 682 F. Supp. 2d 1003, 1014-16 (N.D. Cal. 2010) (allegations of interference with client relationships based upon service of subpoenas and investigation in connection with administrative proceedings and lawsuit were clearly directed at protected activity).

*Neville* is illustrative. There, MaxSecurity terminated Neville from employment, asserting that he had misappropriated customer lists and secretly solicited customers to start a competing business, in violation of his employment agreement. *Neville*, 160 Cal. App. 4th at 1259. Several months before initiating litigation against Neville, MaxSecurity's attorney sent a letter to customers accusing Neville of breach of contract and misappropriation, and suggesting to the customers that they should not do business with Neville to avoid involvement in the potential litigation "as a material witness, or otherwise." *Id*. The letter further suggested that MaxSecurity "shall, if necessary" seek an accounting of any money the customers paid to Neville. *Id.*

9

1    MaxSecurity eventually filed suit against Neville, and Neville filed a cross-complaint for

2    defamation based upon the statements in the letters. *Id.* at 1260.  The court found that the letters

3    were protected conduct under the anti-SLAPP statute.  They were made in connection with

4    anticipated litigation because they were directly related to MaxSecurity's claims for breach of

5    contract and misappropriation and addressed facts related to those claims.  *Id*. at 1267-68.

6    Moreover, they were communications to interested parties in that they were "directed to

7    MaxSecurity's current and former customers—persons whom MaxSecurity reasonably could

8    believe had an interest in the dispute as potential witnesses to, or unwitting participants in,

9    Neville's alleged misconduct."  *Id.* at 1267-68; *see also Healy v. Tuscany Hills Landscape &*

10   *Recreation Corp*., 137 Cal. App. 4th 1 (2006) (reversing trial court's denial of anti-SLAPP motion

11   where defamation action aimed at letter to homeowners' association members to inform them of

12   pending litigation was "unquestionably in connection with judicial proceedings" and therefore

13   protected conduct and absolutely privileged).

14         Here, SEMI has made a *prima facie* showing that the conduct targeted by the intentional

15   interference claim was done in connection with the litigation here.  The content of the

16   communications was directly related to SEMI's action seeking a declaration from the Court as to

17   whether its use of SML infringes any copyright or trademark belonging to PEER.  SEMI contacted

18   the Liquidating Trustee's counsel and Brooks' counsel to inform them of the pending litigation

19   between SEMI and PEER concerning PEER's assertion of trademark rights in SML.  The subject

20   of the amendment to the asset purchase agreement proposed by PEER was PEER's ownership of

21   trademark rights in SML.  The conduct at which the intentional interference claim is directed

22   occurred after the filing of the litigation and directly in connection with the dispute between PEER

23   and SEMI.

24         The fact that PEER initiated its communications about the amendment to the asset

25   purchase agreement a few days prior to the filing of the original complaint here is of no moment.

26   Indeed, PEER itself alleges that it has repeatedly attempted to resolve its dispute with SEMI, but

27   that "SEMI has persisted in refusing to give attribution to PEER as the owner of SML and the

28   SML Marks in violation of SEMI's own regulations." (FAXC ¶ 45.)  Plainly, the dispute about

10

1    ownership of the SML mark was the subject of dispute and potential litigation between PEER and
2    SEMI for some time before it was actually filed.

3         Moreover, PEER's argument that the amendment is irrelevant to the claims in litigation,
4    because it only had to do with the (abandoned) trademark registration and not the common law
5    trademark rights at issue in this case, is not persuasive.  First, SEMI's complaint seeking
6    declaratory relief regarding "any" trademark rights is not limited to common law trademark
7    ownership rights.  Second, federal registration creates a presumption of ownership of the mark.
8    *See* 15 U.S.C. § 1057(b) (registration of mark is *prima facie* evidence of validity and ownership);
9    15 U.S.C. § 1115(a) (same); *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.)
10   *as modified,* 97 F.3d 1460 (9th Cir. 1996) ("registrant is granted a presumption of ownership,
11   dating to the filing date of the application for federal registration, and the challenger must
12   overcome this presumption by a preponderance of the evidence").  Thus, SEMI's counsel's
13   contact with Brooks and the Liquidating Trustee about "efforts to clarify" the federal registration
14   does concern a matter under consideration in this litigation.

15        Finally, PEER's argument that Brooks and the Liquidating Trustee do not have an
16   "interest" in this litigation is also without merit.  These two parties, who PEER sought out as
17   signatories to an amendment to "clarify" PEER's ownership rights of the trademark, are potential
18   witnesses, at least, to the litigation here, much like the current and former customers in *Neville*.
19   Although PEER alleges that SEMI's conduct interfered with a contract "between PEER and
20   Asyst" (FAXC at ¶ 78), the allegations also make clear that the amendment was to be executed by
21   Brooks and the Liquidating Trustee, and that the Liquidating Trustee signed but then withdrew his
22   approval.  As potential or actual signatories to the agreement, communications with them were
23   "directed to persons having some interest in the litigation."  *Neville*, 160 Cal. App. 4th at 1266.

24        PEER argues that SEMI's contact with Brooks and the Liquidating Trustee was coercive
25   and harassing so as to take it outside the realm of protected communications in connection with
26   the litigation, citing *Paul v. Friedman*, 95 Cal. App. 4th 853 (2002) and *Flatley v. Mauro*, 39 Cal.
27   4th 299 (2006).  In *Paul*, the court of appeal found that a complaint alleging causes of action based
28   upon an attorney's "harassing investigation of topics unrelated to those under consideration in an

11

official proceeding is not the type of 'abuse of the judicial process' that the Legislature sought to prevent when it enacted the anti-SLAPP statute." *Paul*, 95 Cal. App. 4th at 861. The plaintiff in *Paul* alleged that an attorney representing an opponent in arbitration engaged in a far-reaching investigation that delved into "personal matters bearing no relationship to the claims asserted…[and] made disclosures to clients and others about Paul's personal life that likewise had nothing to do with the claims under consideration." *Id.* at 866. The injuries alleged had nothing to do with the matters under review in the arbitration. *Id.* In *Flatley*, the court found that an attorneys' letters threatened litigation, but were not protected conduct under 425.16 because they constituted illegal, extortionate demands, and extortion is not a constitutionally protected form of speech. *Flatley*, 39 Cal. 4th at 329 ("At the core of Mauro's letter are threats to publicly accuse Flatley of rape and to report and publicly accuse him of other unspecified violations of various laws unless he 'settled' by paying a sum of money"). The communications also threatened an in-depth investigation of Flatley's personal finances, under the guise of a punitive damages claim, that would then be turned over to the media and various authorities. *Id.*

Here there is no indication that SEMI made any improper threats to Brooks or the Liquidating Trustee, as in *Flately*. Nor is there any indication that the communications with them were unrelated to the litigation, as in *Paul*.

In sum, on the first prong of the anti-SLAPP analysis, the Court finds that SEMI has met its burden to establish a *prima facie* case that the conduct targeted by PEER's claim for intentional interference with contract is protected speech. Having done so, the burden shifts to PEER.

**B.  Likelihood of Prevailing**

Turning to the second prong, PEER must put forward evidence to show that it is likely to prevail on its intentional interference claim. PEER must state a legally sufficient claim and must support that claim with a sufficient evidentiary showing to sustain a favorable judgment. *See Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1044 (2008). SEMI argues that PEER's claim is barred on its face by the litigation privilege, California Civil Code section 47(b).

Section 47 provides absolute immunity from claims based upon "publications" made as part of a judicial proceeding. Cal. Civ. Code § 47(b). "The principal purpose of the litigation

privilege is to afford litigants and witnesses ... the utmost freedom of access to the courts without fear of being harassed subsequently by derivative claims." *Wentland v. Wass,* 126 Cal. App. 4th 1484, 1492 (2005) (internal marks and quotations omitted); *see Feldman v. 1100 Park Lane Associates,* 160 Cal. App. 4th 1467, 1486 (2008) (section 47 has been held to apply to claims of interference with contract and unfair competition) (citing cases). The litigation privilege has been interpreted broadly by the California courts, and applies to any communication made in connection with judicial proceedings. *Feldman,* 160 Cal. App. 4th at 1485.

Statements to third parties about the litigation are privileged under section 47. Cal. Civ. Code § 47(b). To be privileged under section 47, a statement must be "reasonably relevant" to pending or contemplated litigation. *Neville,* 160 Cal. App. 4th at 1266.[4] In *Neville,* the court determined that letters sent by an employer to a former employee's customers, accusing the employee of breach of contract and misappropriation of trade secrets, was covered by the litigation privilege because it directly related to the claims the employer intended to bring in litigation. *Id.* at 1266-70. In this case, counsel for SEMI communicated to the Liquidation Trustee and Brooks (a) that SEMI and PEER were in litigation over the SML trademark; (b) PEER filed a trademark application for an SML word mark; and (c) contentions SEMI expects to raise in this litigation relating to the Amendment.

In the FAXC, PEER alleges a valid contract "between PEER and Asyst" that was known to SEMI and as to which SEMI intended to disrupt performance of its terms. (FAXC, ¶¶ 78-80.)[5] In opposition to the motion, PEER submits evidence indicating that counsel for the Liquidating Trustee told PEER's counsel that he "didn't want to be sued" and would not "subject himself to litigation on the issue [of the amendment] without PEER's agreeing to pay, up front, all costs and

---

[4] The standard for determining whether a communication was made in connection with litigation is similar as between Civil Code section 47 and the anti-SLAPP statute. *See Flately*, 39 Cal.4th at 322-24 (noting relationship between litigation privilege and anti-SLAPP statute, but holding that they are different in substance and purpose).

[5] The opposition brief refers to the contract as being between PEER and "a third party in the form of the [asset purchase agreement], in addition to the amendment." (Dkt. No. 45 ["Oppo."] at 22:6-9.) It is not clear whether PEER is arguing for inclusion of both the amendment and the agreement with Asyst as the contract subject to interference. The outcome here would be the same, regardless.

13

expenses related to the Liquidation Trustee's execution of the amendments." (Tyz Dec., ¶¶ 15, 16, Exh. 8.)  PEER also submits evidence that counsel for Brooks stated that, after learning of the dispute between PEER and SEMI, "we do not wish to be involved in this matter any further." (*Id.*, ¶ 17, Exh. 9.)  PEER argues that SEMI has engaged in "outrageous," "extortionate" conduct, and "threatened frivolous litigation." (Oppo. at 1:14-15, 24; 2:18.)  PEER argues that, although they do not actually know what was said between SEMI's counsel and counsel for Brooks and the Trustee, it is "clear" from the Trustee's demand for indemnification shows that "he was strong-armed to back out of the agreement." (Oppo. at 19:21-24.)  PEER speculates about SEMI's counsel's "apparent collusion with Brooks to agree not to sign the amendment," and that SEMI's communication was an unlawful ploy to get "PEER's trademark counsel to withdraw the amendment from prosecution." (Oppo. at 20:11-17.)

However, PEER offers no evidence of any improper communication or misconduct.  And PEER offers no authority that the litigation privilege would not cover such communications, even if improper.  *Cf. Flatley*, 39 Cal. 4th at 324 (litigation privilege applies to some forms of unlawful litigation-related activity since the purposes of the privilege outweigh the "occasional unfair result" in an individual case); *Doctors' Co. Ins. Servs. v. Superior Court*, 225 Cal. App. 3d 1284, (1990) (litigation privilege applied to claim for subornation of perjury by attorney that occurred in context of defense of action).  PEER argues that the Court cannot determine the merits of the motion because PEER has not been afforded a sufficient opportunity to conduct discovery on matters relevant to oppose the motion and demonstrate the merit of its intentional interference claim.  It is true that, the Ninth Circuit requires a party opposing an anti-SLAPP motion be afforded the same right of discovery as a party opposing summary judgment under Rules 56(f) and (g).  *See Metabolife*, 264 F.3d at 846 (reversing district court's granting of certain defendants' anti-SLAPP motions and remanding to the district court to, in part, permit discovery where information "in the defendants' exclusive control" may have been "highly probative to [plaintiff's] burden"); *Rogers*, 57 F. Supp. 2d at 982 ("Because the discovery-limiting aspects of § 425.16(f) and (g) collide with the discovery allowing aspects of Rule 56, these aspects of subsections (f) and (g) cannot apply in federal court").  However, the Court rejects PEER's lack of discovery

14

argument for two reasons. First, PEER has now withdrawn the claim, making any continuance for discovery futile. Second, and more to the point of the matters at issue in the prevailing party determination, PEER did not show how any discovery it sought would have been material to establishing its claim was meritorious. PEER represented that it propounded discovery as to all communications between the Liquidating Trustee and SEMI's counsel, as well as Brooks and SEMI's counsel regarding SML and the present litigation. PEER seems to believe that, if the letters, emails and other communications were known, it would be clear that SEMI is doing something improper or threatening with respect to its communications with the Liquidating Trustee and Brooks about the amendment. However, PEER offers nothing more than rank speculation and conjecture that either of these third parties, with whom it has already spoken directly, was subjected to any improper or extortionate communications. Further, even if such evidence were uncovered in discovery, it would not overcome the litigation privilege.

Therefore the Court finds that defendants have failed to show that they were likely to prevail on their intentional interference with contract claim, had they continued to pursue it.[6]

## V. CONCLUSION

The motions to strike and to dismiss the third counterclaim for intentional interference with contractual relations are **DENIED AS MOOT**. However, the Court finds that SEMI is a prevailing party for purposes of an award of attorneys' fees and costs under section 425.16(c). SEMI is directed to meet and confer with defendants regarding the attorneys' fees, as required under Local Rule 54-5(b)(1). This Order terminates Dkt. No. 34.

**IT IS SO ORDERED.**

Dated: September 18, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

---

[6] SEMI raised an additional argument on the merits – that the amendment entered into by the Liquidating Trustee was *void ab initio* because he no longer had any authority under the Bankruptcy Order to modify the terms of the bankruptcy. Defendants offer argument and evidence to put that in dispute. The Court need not decide that additional dispute in order to determine the prevailing party issue that remains here.

15